# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| JAMES W. SETCHFIELD, | ) |
| Plaintiff, | ) ) ) |
| v. | ) )  No. 4:21-CV-923 RLW |
| ST. CHARLES COUNTY, et al., | ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants St. Charles County, Nicholas Seiverling, Scott Ronald, and John Williams's motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 14). Plaintiff opposes the motion, which is fully briefed and ripe for review. For the reasons that follow, Defendants' Motion is granted in part and denied in part.

### I.   *Procedural Background*

This case arises out of an incident that took place on August 18, 2020, in St. Charles County, Missouri. Plaintiff James W. Setchfield alleges officers of the St. Charles County Police Department ("SCCPD"), acting under color of state law, subjected Plaintiff to a severe beating without cause and falsely arrested and imprisoned him.

Plaintiff filed suit on July 27, 2021, against St. Charles County ("the County"), and three police officers – Officer Nicholas Seiverling, Officer Scott Ronald, and Sergeant John Williams (the "Officer Defendants"). Plaintiff brings suit against the Officer Defendants in their individual and official capacities. Plaintiff alleges the following civil rights violations under 42 U.S.C. § 1983: excessive force against Defendants Seiverling and Ronald (Count I); unlawful arrest against Defendants Seiverling and Ronald (Count II); false imprisonment against Defendants

Seiverling, Ronald, and Williams (Count III); failure to intervene against Defendant Williams (Count IV); municipal liability against the County (Count V); and failure to train/instruct/supervise and discipline against the County (Count VI).  Plaintiff also raises the following supplemental state-law claims: battery against Defendants Seiverling and Ronald (Count VII); assault against Defendants Seiverling and Ronald (Count VIII); and negligence against all Defendants (Count IX).

In their Motion to Dismiss, the Officer Defendants move to dismiss Counts I-IV on the basis of qualified immunity and Counts VII-IX on the grounds of official immunity and the public duty doctrine.  The County moves to dismiss Counts V and VI, arguing Plaintiff did not sufficiently allege facts to establish governmental liability under Monell v. Department of Social Services of New York City, 436 U.S. 658, 691 (1978).  The County also argues that Count IX should be dismissed on the basis of sovereign immunity.  All Defendants argue official capacities claims against the Officer Defendants should be dismissed as they are redundant to claims made against the County, for which there is no liability.  Defendants further argue Plaintiff's request for attorneys' fees on the state law claims should be dismissed for failure to plead an exception to the American Rule, and his request for punitive damages against the County should be dismissed on the bases of federal immunity and sovereign immunity.

## II.     Legal Standard

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "where the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Blomker v. Jewell, 831 F.3d 1051, 1055 (8th Cir. 2016) (quotation omitted).  The facts alleged

2

must "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. A complaint must offer more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" to state a plausible claim for relief. Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," Twombly, 550 U.S. at 556, and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief. Id. at 555–56; Fed. R. Civ. P. 8 (a)(2). The principle that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions, however. Iqbal, 556 U.S. at 678 (stating "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Although legal conclusions can provide the framework for a complaint, they must be supported by factual allegations. Id.

### III.   Factual Allegations[1]

The following facts are alleged in Plaintiff's Complaint:

On August 18, 2020, Plaintiff's son, David C. Setchfield, was stopped by Defendant Seiverling in the parking lot of an Outback Steakhouse in St. Charles County. Defendant

---

[1] In the Memorandum in Support of their Motion to Dismiss, Defendants make a number of factual statements that are not contained in the Complaint. Defendants ask the Court to consider these facts by taking judicial notice of the Probable Cause Statement executed in the state criminal case against Plaintiff. Ordinarily, only facts alleged in the complaint are considered in ruling on a 12(b)(6) motion. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). But a court may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record." Miller v. Redwood Toxicology Lab., Inc., 688 F.3d 928, 931 n.3 (8th Cir. 2012). "Judicial notice of a fact is only to be taken when that fact is not subject to reasonable dispute." Lustgraaf v. Behrens, 619 F.3d 867, 885-86 (8th Cir. 2010). The Probable Cause Report is a public record, and the Court may take judicial notice that it exists. The Court cannot, however, accept as true the content of the report, which is subject to dispute. Id. at 885-86 (when deciding a motion to dismiss, a district court may take judicial notice of a public document for the purpose of determining what statements the document contains, but not to prove the truth of the document's contents).

Seiverling contacted Defendant Ronald for assistance, and David Setchfield was arrested for Driving Under the Influence-Drugs. Because David Setchfield was cooperative, Defendants Seiverling and Ronald allowed him to request a ride home rather than be transported to the County jail. David Setchfield contacted his father, the plaintiff in this case. Shortly thereafter, Plaintiff arrived on the scene. Defendant Williams also arrived at the scene in the parking lot.

The Complaint alleges that at the time, Plaintiff was 68 years and in poor health. Plaintiff had difficult ambulating on his own without a walker, and just prior to the incident had undergone eye surgery from which he was still recovering.

When Plaintiff first arrived at the scene, he made contact with Defendant Ronald, who was seated in his patrol car. Plaintiff remained in his vehicle and rolled down the window to inquire what was going on. Defendant Ronald informed Plaintiff that he needed to leave the area as the officer was otherwise busy on a call. Plaintiff attempted to tell Defendant Ronald who he was and inquired where his son was located. Defendant Ronald refused to tell Plaintiff and told him to leave.

Plaintiff pulled his car away from Defendant Ronald's patrol car, parked, and attempted to open the driver's side door of his car so he could speak with Defendant Seiverling about his son. According to the Complaint, without provocation, Defendant Ronald exited his patrol car, ran to the driver's side of Plaintiff's vehicle, and attempted to physically pull Plaintiff from the vehicle through the window, telling Plaintiff he was going to arrest him for interfering with an officer.

Plaintiff pulled back and otherwise retreated into his vehicle. Plaintiff also told Defendant Ronald to get off of him. At that time, Defendant Ronald began punching Plaintiff in and about the body, causing Plaintiff to scream in pain. Despite Plaintiff's repeated attempts to explain who he was, Defendant Ronald continued to beat him about the body and attempted to stop the engine of his vehicle.

4

Defendant Seiverling jumped in front of Defendant Ronald, gained partial entry to the driver's side of Plaintiff's vehicle and then began to severely beat Plaintiff. Defendant Seiverling repeatedly punched Plaintiff in the face and neck, including the area where Plaintiff recently had eye surgery. Defendant Seiverling disengaged Plaintiff's seat belt, removed him from the vehicle and threw Plaintiff to the ground by tripping him, and continued to punch him about the face and body. Plaintiff's vehicle "slid backwards" until Defendant Ronald was able to stop it. Plaintiff was placed in prone position and restrained with such force that he sustained a shoulder injury requiring surgery. Plaintiff was not given a verbal warning for any potential criminal behavior before Defendants Ronald and Seiverling initiated the beating. Defendant Williams was on the scene at the time of the beating and failed to intervene.

Due to the serious nature of Plaintiff's injuries, St. Charles County EMTs arrived at the scene to render aid. Defendant Seiverling requested Plaintiff be transported to the County jail or police department, notwithstanding Plaintiff's medical condition. EMT personnel required his immediate release for hospitalization, however.

Plaintiff was later charged with two misdemeanor state criminal charges, Resisting/Interfering with Arrest, Detention or Stop, and 4th Degree Assault on a Law Enforcement Officer, in Cause No. 2011-CR03643. Plaintiff alleges Defendants Ronald, Seiverling, and Williams prepared materially false and inconsistent Offense/Incident reports including false representations that Plaintiff, for no apparent reason, shouted obscenities, threatened them, resisted arrest, and tried to use a vehicle to cause them harm.

As a direct result of the beating, Plaintiff suffered significant injuries to his head, face, and body, to include lacerations, bruising, contusions, and exacerbation of existing ailments, all requiring hospitalization, and further surgical correction. Plaintiff also continues to suffer extreme emotional distress as a result of Defendants' conduct.

The Complaint alleges that, in general, the St. Charles County Police Defendant ("SCCPD") has a history of violating individuals' civil rights, including by using more force than necessary. SCCPD also is alleged to have a custom or practice of subjecting persons to unnecessary and maximum physical force in contravention of clear SCCPD policy prohibiting such conduct. Defendants Ronald and Seiverling's beating of Plaintiff was in direct violation of any and all applicable regulations, procedures, general orders, and/or standards, including the "Use of Force Continuum."

## IV.   Discussion

### A.   Qualified Immunity

The Officer Defendants argue they are entitled to qualified immunity as to all claims against them made pursuant to 42 U.S.C. § 1983 for constitutional violations. Defendants Seiverling and Ronald move to dismiss Counts I, II, and III for excessive force, unlawful arrest, and false imprisonment. Defendant Williams moves to dismiss Counts III and IV for false imprisonment and failure to intervene.

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Officials are entitled to qualified immunity "unless (1) the evidence, viewed in the light most favorable to the plaintiffs, establishes a violation of a constitutional or statutory right, and (2) the right was clearly established at the time of the violation, such that a reasonable officer would have known that his actions were unlawful." Bernini v. City of St. Paul, 665 F.3d 997, 1002 (8th Cir. 2012). Qualified immunity serves to protect "all but the plainly incompetent or those who knowingly violate the law." Franklin for Est.

6

of Franklin v. Peterson, 878 F.3d 631, 635 (8th Cir. 2017).  Officers are allowed considerable room for mistaken judgments.

To be clearly established, the contours of the right must be sufficiently clear that a reasonable official would have understood that what he was doing violated the right.  Quraishi v. St. Charles Cnty., Mo., 986 F.3d 831, 835 (8th Cir. 2021) (citation omitted).  The state of the law at the time of the alleged violation – articulated by precedent, controlling authority, or a robust consensus of persuasive authority – must give officials "fair warning" that their conduct was unlawful.  Id.  There may also be the rare obvious case where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances.  Id.

In moving for dismissal on the basis of qualified immunity, the Defendant Officers offer the following argument without any reference to the specific claims Plaintiff is bringing against them:

> The facts as described by Plaintiff in his Complaint, taken together with the associated public court records relating to Plaintiff's state criminal charges, describe the conduct of reasonable police officers carrying out their official duties, which Plaintiff interfered with, and Seiverling, Ronald, and Williams's actions were not a violation of Plaintiff's constitutional or statutory rights as they were objectively reasonable in light of the law and the information the officers possessed at the time.

(ECF No. 15 at 5-6).  This is the extent of Defendants' legal analysis regarding the issue of qualified immunity.

As stated above, the Court must accept as true all of the factual allegations contained in the Complaint, even if it appears that "actual proof of those facts is improbable," Twombly, 550 U.S. at 556.  Despite Defendants' urging, the Court will not take judicial notice of the statements made in the Probable Cause Statement.  In deciding the issues in a Rule 12(b)(6) motion to dismiss, a district court may take judicial notice that a public document exits, but the document may not be

used to establish the truth of its contents. Graham v. Catamaran Health Sols. LLC, 940 F.3d 401, 405 n.1 (8th Cir. 2017) ("we may take judicial notice of filings of public record and the fact (but not the veracity) of parties' assertions therein."). The Court cannot accept as true the content of the Probable Cause Statement, which is subject to dispute. Id. at 885–86.

    Defendants are asking the Court to reject Plaintiff's allegations and adopt as true their version of the facts, which is entirely inappropriate at this stage in the case. The fact that the allegations in the Complaint differ from Officer Ronald's version of the events in the Probable Cause Statement does not entitle Defendants to dismissal. Rather, it suggests there are factual disputes a finder-of-fact may need to resolve later in these proceedings. For purposes of the Rule 12(b)(6) Motion to Dismiss, the Court will only consider the allegations in the Complaint. Based on these allegations, the Defendant Officers are not entitled to qualified immunity. Plaintiff alleges Defendants Seiverling and Ronald beat him without provocation or reason, and Defendant Williams was present and failed to intervene. Plaintiff also alleges Defendants Seiverling, Ronald, and Williams detained and arrested him without any probable cause. The allegations in the Complaint do not describe reasonable conduct by officers carrying out their official duties.

    At the time of the events in question, it was "clearly established that force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public." Brown v. City of Golden Valley, 574 F.3d 491, 499 (8th Cir. 2009). It was also clearly established that "the use of . . . gratuitous force against a suspect who is handcuffed, not resisting, and fully subdued is objectively unreasonable under the Fourth Amendment." Krout v. Goemmer, 583 F.3d 557, 566 (8th Cir. 2009); Blazek v. City of Iowa City, 761 F.3d 920, 925 (8th Cir. 2014) (holding it was clearly established that jerking a non-resisting and handcuffed detainee up by the arms with sufficient force to injure his shoulder was

8

"[a] gratuitous and completely unnecessary act of violence [that] violates the Fourth Amendment") (internal citation omitted).

In light of this precedent, it was not objectively reasonable for Defendants Seiverling and Ronald to punch Plaintiff in the face, neck, and body and severely beat him when Plaintiff was not fleeing, posing a threat to anyone, or resisting arrest in any way. Defendants Seiverling and Ronald are not entitled to qualified immunity with regard to Plaintiff's claim of excessive force.

Further, Plaintiff alleges that Defendant Williams had the ability to intervene and order the other officers to cease the use of excessive force against Plaintiff. The Eighth Circuit held that as of June 2007, it was clearly established "an officer who fails to intervene to prevent the unconstitutional use of excessive force by another officer may be held liable for violating the Fourth Amendment." Nance v. Sammis, 586 F.3d 604, 612 (8th Cir. 2009). The allegations in the Complaint are sufficient to state a claim against Defendant Williams for his failure to intervene. See Wagner v. Jones, 664 F.3d 259, 275 (8th Cir. 2011) ("The supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he or she] might see.").

As for Plaintiff's claims that the Officer Defendants violated his rights by unlawfully arresting and detailing him, it was clearly established at the time that it is a constitutional violation to arrest someone without probable cause. Quraishi, 986 F.3d at 836; see also Borgman v. Kedley, 646 F.3d 518, 522-23 (8th Cir. 2011). There is nothing in the Complaint to suggest the Defendant Officers had arguable probable cause to arrest Plaintiff for a crime. The Officer Defendants' motion to dismiss Counts I through IV on the basis of qualified immunity is denied.

**B.    Official Capacity Claims and Sovereign Immunity**

The Court will grant Defendants' Motion to Dismiss the civil rights claims brought against the Defendants Officers in their official capacities. Plaintiff brings claims against the Defendant

9

Officers in their individual capacities as well as their official capacities. A suit against a government official in his or her official capacity is "another way of pleading an action against an entity of which an officer is an agent." Baker v. Chisom, 501 F.3d 920, 925 (8th Cir. 2007) (citing Monell, 436 U.S. at 690 n.55). "[T]he real party in interest in an official-capacity suit is the governmental entity and not the named official." Hafer v. Melo, 502 U.S. 21, 25 (1991); see also Elder-Keep v. Aksamit, 460 F.3d 979, 986 (8th Cir. 2006) ("A suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent"). Because official capacity suits are the equivalent of a suit against the government entity employing the official, the Eighth Circuit has held that claims against officers in their official capacity are properly dismissed as redundant to claims asserted against the entity itself. See Banks v. Slay, 875 F.3d 876, 881 (8th Cir. 2017) ("an official-capacity suit is a suit against a government entity"), Artis v. Francis Howell N. Band Booster Ass'n, Inc., 161 F.3d 1178, 1182 (8th Cir. 1998) (official-capacity claim against public official was correctly dismissed as redundant to claim against official's government entity employer). Plaintiff's official capacity claims against the Officer Defendants are dismissed as redundant.

### C. Civil Rights Claims Against the County

Plaintiff brings two counts under § 1983 against the County directly for "municipal liability" (Count V), and failure to train/instruct/supervise and discipline (Count VI).

The doctrine of respondeat superior does not apply to § 1983 claims against a governmental entity. Frentzel v. Boyer, 297 F. App'x 576, 577 (8th Cir. 2008); Tlamka v. Serrell, 244 F.3d 628, 635 (8th Cir. 2001). It is not enough that the County employed the Defendant Officers, the alleged wrongdoers. Atkinson v. City of Mountain View, Mo., 709 F.3d 1201, 1207 (8th Cir. 2013). For § 1983 liability to attach to a governmental entity, a plaintiff must show that a constitutional violation resulted from (1) an official policy, (2) an unofficial custom, or (3) a deliberately

indifferent failure to train or supervise. Corwin v. City of Indep., Mo., 829 F.3d 695, 699 (8th Cir. 2016) (citing City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989); Monell, 436 U.S. at 691)). To state a valid claim under § 1983, there must be a causal connection between the governmental policy or custom, or its failure to train or supervise, and the alleged constitutional deprivation. Id. The County moves to dismiss all § 1983 claims against it on the grounds that Plaintiff failed to adequately allege his rights were violated based on the County's official policy, a custom or practice, and/or a failure to train or supervise.

1. *Official policy, custom, or practice*

The County argues Plaintiff fails to plead facts identifying an official policy or a widespread custom or practice that caused the violation of Plaintiff's constitutional rights. In the context of governmental liability under § 1983, the term "policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the [government] official who has final authority regarding such matters." Corwin, 829 F.3d at 700. Alternatively, a plaintiff can hold a governmental entity liable based on an unconstitutional "custom." The Supreme Court has explained, "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a [governmental entity] to liability on the theory that the relevant practice is so widespread as to have the force of law." Board of Cnty. Comm'rs of Bryan Co., Okla. v. Brown, 520 U.S. 397, 404 (1997). "Governmental liability may be established through proof that the alleged misconduct was so pervasive among the non-policy making employees of the [entity] as to constitute a 'custom or usage' with the force of law." McGautha v. Jackson Cnty., Mo., Collections Dep't, 36 F.3d 53, 56 (8th Cir. 1994) (internal quotation marks and citation omitted).

In order to plead liability based on custom, a plaintiff must allege facts showing the following: (1) the existence of a "continuing, widespread, persistent pattern" of unconstitutional

misconduct by the governmental entity's employees; (2) "deliberate indifference to or tacit authorization" of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, in other words, that the custom was "a moving force" behind the constitutional violation.  Johnson v. Douglas Cnty. Med. Dep't, 725 F.3d 825, 828 (8th Cir. 2013) (quoted case omitted).

In his Complaint, Plaintiff alleges "on information and belief, SCCPD has a history of violating the civil rights of those parties in which law enforcement personnel come into contact with, including using more force than necessary."  (ECF No. 1 at 9, ¶ 38).  Plaintiff also alleges the SCCPD has "a custom or practice of subjecting persons to unnecessary and maximum physical force," which is contrary to clear SCCPD policy.  (Id. at 10, ¶ 39).  "This custom or practice has been evidenced by the actions of the Defendants in this case where Plaintiff presented no risk of harm at any time."  (Id.).  The Complaint also alleges SCCPD maintains "an unconstitutional policy, custom and practice of using or allowing excessive force, which has been demonstrated by inadequate training of [the Defendant Officers] – said policy, custom and practice were made with deliberate indifference to the safety and rights of members of the general public."  (Id. at 17, ¶ 75(d)).

The Court finds the allegations in the Complaint are insufficient to state a claim against the County based on a policy, custom, or practice, because Plaintiff does not allege any facts to support this theory of liability.  With regard to an official policy, Plaintiff alleges the County had "regulations, procedures and/or general orders and standards" in place, and specifically refers to the "Use of Force Continuum."  (ECF No. 1 at 10).  While Plaintiff need not identify the specific policy to survive a motion to dismiss, he must allege in what way an official policy was unconstitutional and facts to support the inference that the conduct complained of resulted from

12

the existence of an unconstitutional policy.  Ulrich v. Pope Cnty., 715 F.3d 1054, 1061 (8th Cir. 2013); Johnson, 725 F.3d at 828.  Plaintiff alleges the County had policies in place, but does not allege any facts as to how these policies were unconstitutional or that the Officer Defendants' conduct was the result of an official policy.

As for custom or practice, the Complaint alleges the County has a history of transgressions that establishes a practice of violating citizens' constitutional rights, but Plaintiff does not identify any other transgressions, aside from his own encounter with the Defendant Officers.  In his Response, Plaintiff states he is aware of his obligation to prove the existence a policy or custom, and argues the Complaint is sufficient at the pleading stage because it "focuse[s] on [the Officer] Defendants' failure to follow their own rules in beating Plaintiff and then falsely arresting him." (ECF No. 17 at 8).  The Court does not agree.  To rely on custom or practice to establish liability, there must some factual allegations to suggest more than one transgression has occurred.  Ulrich, 715 F.3d at 1061 ("Generally, an isolated incident of alleged police misconduct . . . cannot, as a matter of law, establish a municipal policy or custom creating liability under § 1983.") (citing Wedemeier v. City of Ballwin, Mo., 931 F.2d 24, 26 (8th Cir. 1991)).  Further, the Complaint does not allege any facts to suggest the County knew of any widespread pattern of unconstitutional misconduct and failed to take action to address it.

Plaintiff makes only conclusory allegations with regard to the County's liability based on policy, custom, or practice.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  Id. at 679.  Plaintiff fails to allege sufficient facts to demonstrate the existence of a

13

policy or custom or practice that caused the deprivation of his constitutional rights. The Court dismisses Count V.

### 2. *Failure to train, supervise, control, or discipline*

As an alternative theory, Plaintiff alleges the County is liable because it failed to properly hire, train, supervise, control, or discipline the Officer Defendants. The County moves to dismiss any claim based on this theory because, it argues, Plaintiff has not alleged sufficient facts to support such a theory of liability.

To state a claim against a governmental entity based on the theory of failure to train, Plaintiff is required to plead facts sufficient to show that "(1) [the] County's officer-training practices were inadequate; (2) [the] County was deliberately indifferent to the rights of others in adopting these training practices, and [the] County's failure to train was a result of deliberate and conscious choices it made; and (3) [the] County's alleged training deficiencies caused [Plaintiff]'s constitutional deprivation." Ulrich, 715 F.3d at 1061; see also City of Canton, Ohio, 489 U.S. at 389; Andrews v. Fowler, 98 F.3d 1069, 1076 (8th Cir. 1996). Ultimately, Plaintiff must prove the County "had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation." Brewington v. Keener, 902 F.3d 796, 803 (8th Cir. 2018) (quoting Livers v. Schenck, 700 F.3d 340, 356 (8th Cir. 2012)). A governmental entity's culpability for a deprivation of rights "is at its most tenuous where a claim turns on a failure to train." Connick v. Thompson, 563 U.S. 51, 58 (2011) (citation omitted). To state a claim under § 1983, a governmental entity's "failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.' Only then 'can such a shortcoming be properly thought of as a [ ] policy or custom that is actionable under § 1983.'" Id. at 58-59 (quoting City of Canton, Ohio, 489 U.S. at 388).

14

The Complaint alleges the County is liable under § 1983 for failing to instruct, supervise, control, and/or discipline the Defendant Officers "in the performance of their duties to refrain from: (a) unlawful searches and seizures of its citizens; (b) use of excessive force against its citizens; and (c) otherwise depriving citizens of their constitutional and statutory rights, privileges and immunities." (ECF No. 1 at 19). It further alleges the County "had knowledge of, or had it diligently exercised its duties to instruct, supervise, control and discipline on a continuing basis, should have had knowledge that the wrongs done, or heretofore alleged, or other unlawful or unconstitutional acts were going to be committed." (Id.)

The Court finds Plaintiff fails to allege sufficient facts to state a claim under § 1983 against the County on a failure to train/instruct/supervise theory. The Complaint is devoid of pertinent factual allegations other than those related to the specific encounter at issue. To plead his theory of liability against the County for its alleged failure to train, Plaintiff relies on factual allegations that he was unlawfully beaten, detained, and arrested by the Defendant Officers, and ipso facto, that the County did not properly train these officers. This is not enough. Ulrich, 715 F.3d at 1061.

Plaintiff must plead facts sufficient to show that the County's training practices were inadequate; its failure to train was a result of deliberate and conscious choices; and the training deficiencies resulted in the deprivation of Plaintiff's constitutional rights. Id. Plaintiff makes conclusory recitations of the elements of a claim based on failure to train, supervise, control, or discipline the individual defendants. Plaintiff fails to allege facts to make the claim plausible on its face. Iqbal, 556 U.S. at 678. The complaint is devoid of any facts relating to this theory of liability which, if proven, would establish § 1983 liability against the County. The Court dismisses Count VI.

**D.     State Law Claims**

    *1.     Official immunity and public duty doctrine*

The Officer Defendants move to dismiss Plaintiff's state law claims in Count VII-IX on the basis of official immunity.  Under applicable Missouri law, official immunity "protects public officials sued in their individual capacities from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts." State ex rel. Helms v. Rathert, 624 S.W.3d 159, 163 (Mo. 2021) (en banc) (quoting State ex rel. Alsup v. Kanatzar, 588 S.W.3d 187, 190 (Mo. 2019) (en banc)).  The purpose of official immunity is "to allow public officials to make judgments affecting the public safety and welfare without [t]he fear of personal liability." Alsup, 588 S.W.3d at 190 (alteration in original) (internal quotations and citations omitted).  Accordingly, official immunity has been broadly applied. Id. ("Courts applying the doctrine of official immunity must be cautious not to construe it too narrowly lest they frustrate the need for relieving public servants of the threat of burdensome litigation.")

The Officer Defendants argue they are entitled to official immunity because the performance of their jobs as police officers requires the exercise of judgment, and whether to investigate, arrest and charge Plaintiff – in other words, the conduct upon which the state law claims are based – involved discretionary acts, not ministerial functions.  The Defendant Officers argue they are entitled to official immunity as to the state law claims against them, citing Reasonover v. St. Louis County, Missouri, 447 F.3d 569, 585 (8th Cir. 2006).

With regard to the public duty doctrine, the Officer Defendants argue that "[a] police officer's duties to enforce the law and keep the peace are public duties, an alleged breach of which is not actionable by an individual citizen." (ECF No. 15 at 7) (citing Deuser v. King, 24 S.W.3d 251, 254–55 (Mo. Ct. App. 2000)).  The Officer Defendants contend Plaintiff cannot establish he was owed a duty of care particularized to him as an individual, as opposed to a general public duty

16

and, therefore, the public duty doctrine applies and shields them from liability on Counts VII through IX.

Official immunity and the public duty doctrine are not absolute. Official immunity does not apply where a discretionary act is "willfully wrong or done with malice or corruption." Letterman v. Does, 859 F.3d 1120, 1125 (8th Cir. 2017) (quoting Southers v. City of Farmington, Mo., 263 S.W.3d 603, 610 (Mo. 2008) (en banc), as modified on denial of reh'g (Sept. 30, 2008)). Likewise, the public duty doctrine will not apply where public employees act "in bad faith or with malice." Southers, 263 S.W.3d at 612 (citations omitted). As to Counts VII and VIII, for battery and assault, the Court finds Plaintiff's allegations state facts from which it could be reasonably inferred that Defendants Ronald and Seiverling acted in bad faith or with malice by beating Plaintiff without cause, warning, or justification. The Officer Defendants' motion to dismiss on the basis of official immunity and the public duty doctrine is denied with regard to these two counts.

As for Count IX, by definition, a claim of negligence does not include a willful wrong or malicious act. Under Missouri law, public employees are shielded from liability for negligent acts. Southers, 263 S.W.3d at 611 ("A finding that a public employee is entitled to official immunity does not preclude a finding that he or she committed a negligent act–because official immunity does not deny the existence of the tort of negligence, but instead provides that an officer will not be liable for damages caused by his negligence."). The Court grants Defendants' motion to dismiss as to Count IX.

    2.    *Sovereign immunity*

Plaintiff also brings his negligence claim in Count IX directly against the County. The County is entitled to dismissal of Count IX on the basis of sovereign immunity. Missouri law provides that government entities have sovereign immunity from suit. Mo. Rev. Stat. § 537.600

17

(2010) (creating this immunity). Section 537.600 contains two exceptions to sovereign immunity–for automobile cases and cases involving injury caused by a dangerous condition of public property–but neither exception is at issue here. See Hammer v. City of Osage Beach, 318 F.3d 832, 841 (8th Cir. 2003); Ozark Silver Exch., Inc. v. City of Rolla, 664 S.W.2d 50, 51 (Mo. Ct. App. 1984) ("The operation and maintenance of a police force is a governmental function, and a municipality is immune from torts arising out of governmental functions" except for the application of statutory exceptions.).

Plaintiff argues the County might have an insurance policy that would void its sovereign immunity under § 537.610.1, Mo. Rev. Stat. But "to penetrate a claim of immunity under section 537.610.1, a plaintiff is required to demonstrate the existence of insurance that covered the plaintiff's claim." Epps v. City of Pine Lawn, 353 F.3d 588, 594 (8th Cir. 2003). Moreover, because "a public entity's liability for torts is the exception to the general rule of sovereign immunity, a plaintiff must specifically plead facts demonstrating that the claim is within this exception to sovereign immunity." Id. (citing cases). Plaintiff has made no such factual allegations here. Count IX is dismissed against the County.

### E. Attorneys' Fees

Defendants argue the Court should "dismiss" Plaintiff's prayer for attorneys' fees on the ground that Plaintiff has not identified the existence of a contract or statute allowing for recovery of attorneys' fees on his state law claims. A request for attorneys' fees is not a claim subject to dismissal at this point in the proceedings, as attorneys' fees are allowed in certain circumstances under a § 1983 claim where a party has prevailed on the merits. See e.g., Clark v. Kansas City Mo. Sch. Dist., 375 F.3d 698, 703 (8th Cir. 2004) (citing 42 U.S.C. §1988(b)). This aspect of Defendants' motion is denied.

**F.       Punitive Damages**

Finally, the County argues that it is absolutely immune from an award of punitive damages under § 1983, citing City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981).  Plaintiff concedes he is not entitled to punitive damages against the County under § 1983.  Plaintiff's prayer for punitive damages against the County is moot, however, because the Court has dismissed the § 1983 claims against the County.  This aspect of Defendants' motion is denied as moot.

*V.       Conclusion*

For the reasons set out above, the Officer Defendants are not entitled to qualified immunity on the § 1983 claims in Counts I through IV.  Plaintiff's official capacity claims against the Officer Defendants are dismissed as redundant.  The Court dismisses the § 1983 claims against the County in Counts V and VI, as Plaintiff fails to allege sufficient facts to establish the County's liability under Monell and its progeny.  The Court dismisses the state law claim of negligence in Count IX because the Defendant Officers have official immunity and the County is entitled to sovereign immunity.  Defendants Seiverling and Ronald are not entitled to dismissal of the state law battery and assault claims in Counts VII and VIII based on official immunity or the public duty doctrine.  Finally, Defendants' argument with regard to punitive damages is moot, as Plaintiffs' claims against the County are dismissed.  The Court will not dismiss Plaintiff's prayer for attorneys' fees, as Plaintiff may be entitled to attorneys' fees against the Officer Defendants under 42 U.S.C. § 1988(b) if he prevails on his § 1983 claims.

Accordingly

**IT IS HEREBY ORDERED** that Defendants St. Charles County, Nicholas Seiverling, Scott Ronald, and John Williams's Motion to Dismiss is **GRANTED** in part and **DENIED** in part, as follows:  (1) Defendant St. Charles County is **DISMISSED** from this cause of action without prejudice; (2) Count IX, the state law claim for negligence, is **DISMISSED**; and (3) claims against

Defendants Nicholas Seiverling, Scott Ronald, and John Williams in their official capacities are **DISMISSED**. In all other respects, the Motion to Dismiss is **DENIED**. (ECF No. 14)

An order of partial dismissal will accompany this Memorandum and Order.

*Ronnie L. White*

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this  25th  day of February 2022.