UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES W. SETCHFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:21-CV-923 RLW |
| | ) | |
| ST. CHARLES COUNTY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants Nicholas Seiverling, Scott Ronald, and John Williams's motion for summary judgment, which is fully briefed and ripe for review.  (ECF No. 41).  In his Memorandum in Opposition, Plaintiff James W. Setchfield concedes Defendant Williams should be dismissed from the case.  The Court, therefore, grants the motion for summary judgment as to Defendant Williams.  Plaintiff opposes the motion as to Defendants Seiverling and Ronald.  For the reasons that follow, Defendants Seiverling and Ronald's Motion for Summary Judgment is granted in part and denied in part.

*I.      Procedural Background*

This case arises out of an incident that took place on August 18, 2020, in St. Charles County, Missouri.  In his Complaint, Plaintiff alleges that officers of the St. Charles County Police Department ("SCCPD") arrested his son, David Setchfield, during a traffic stop.  Plaintiff was phoned to pick up his son in the parking lot of the Outback Steakhouse in O'Fallon, Missouri. When Plaintiff arrived on the scene, he spoke with officers and, after some words were exchanged, Defendants Seiverling and Ronald, officers of SCCPD, subjected Plaintiff to a beating without cause and falsely arrested and detained him.

Plaintiff filed suit on July 27, 2021, against St. Charles County ("the County"), and three police officers – Defendants Nicholas Seiverling, Scott Ronald, and John Williams (collectively the "Officer Defendants").  The Complaint alleges the following civil rights violations under 42 U.S.C. § 1983: excessive force against Defendants Seiverling and Ronald (Count I); unlawful arrest against Defendants Seiverling and Ronald (Count II); false imprisonment against Defendants Seiverling, Ronald, and Williams (Count III); failure to intervene against Defendant Williams (Count IV); municipal liability against the County (Count V); and failure to train/instruct/supervise and discipline against the County (Count VI).  Plaintiff also raises the following supplemental state law claims: battery against Defendants Seiverling and Ronald (Count VII); assault against Defendants Seiverling and Ronald (Count VIII); and negligence against all Defendants (Count IX).

Defendants filed a Motion to Dismiss, which the Court granted in part and denied in part. In a Memorandum and Order dated February 25, 2022, the Court found, based on the allegations in the Complaint, that the Officer Defendants were not entitled to qualified immunity on Plaintiff's § 1983 claims in Counts I through IV.  The Court dismissed Plaintiff's § 1983 claims against the County in Counts V and VI, as Plaintiff failed to allege sufficient facts to establish the County's liability under Monell v. Department of Social Services of New York City, 436 U.S. 658, 691 (1978), and its progeny.  The Court dismissed Plaintiff's state law claim of negligence in Count IX.  The Court further found, based on the allegations in the Complaint, that Defendants Seiverling and Ronald were not entitled to dismissal of the state law battery and assault claims in Counts VII and VIII on the basis of official immunity or the public duty doctrine.

Following discovery in the case, Defendants Seiverling and Ronald now move for summary judgment as to the remaining claims against them.  Once again, Seiverling and Ronald argue they are entitled to qualified immunity on Plaintiff's § 1983 claims in Counts I and II.  With

regard to Count III, false imprisonment under 42 U.S.C. § 1983, Defendants argue Plaintiff has failed to state a cognizable claim because false imprisonment is not cognizable under the Fourth Amendment; it is a state law tort.  As for Plaintiff's state law claims of assault and battery, Defendants Seiverling and Ronald argue Plaintiff is unable to present prima facie evidence to support the claims and, in any event, the claims are barred by official immunity and the public duty doctrine.  Plaintiff responds that there remain disputes of fact that preclude the entry of summary judgment as to all of his claims against Defendants Seiverling and Ronald.

## II.    *Legal Standard*

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). The substantive law determines which facts are critical and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. Id. Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex Corp., 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248.  "The nonmoving party may not rely on allegations or denials," but rather "must substantiate [its] allegations with sufficient probative evidence that would permit a finding in [its] favor on more than mere speculation or conjecture." Carter v. Pulaski Cnty. Special Sch. Dist.,

956 F.3d 1055, 1059 (8th Cir. 2020) (quoting Ball v. City of Lincoln, Neb., 870 F.3d 722, 727 (8th Cir. 2017) (cleaned up)). "Small factual disputes about the underlying events . . . could only create the 'metaphysical' kind of doubt that the Supreme Court decried in Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)." Main v. Ozark Health, Inc., 959 F.3d 319, 327 (8th Cir. 2020) (cleaned up; quoted case omitted).

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. Celotex Corp., 477 U.S. at 331. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" Torgerson, 643 F.3d at 1042 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)).

### III.  Analysis of the Facts

### A.    Facts Viewed in Light Most Favorable to Plaintiff

It is undisputed that on the evening of August 18, 2020, David Setchfield telephoned his father, Plaintiff James Setchfield, asking to be picked up following his arrest by two officers of the SCCPD, Defendants Seiverling and Ronald.  David Setchfield had been stopped and arrested for DUI and was placed in the back of a patrol car.  Defendant Ronald told David Setchfield that he could call and have someone pick him up.  David Setchfield called his father and instructed him to come to the parking lot of the Outback Steakhouse.  What happened when Plaintiff arrived at the Outback Steakhouse parking lot is hotly contested by Plaintiff and Defendants Seiverling and Ronald.

The Court has reviewed Plaintiff's First Amended Response to Defendants' Statement of Uncontroverted Facts and the supporting evidence.[1]  As discussed below, Plaintiff's version of the facts has changed, and there are discrepancies between Plaintiff's deposition testimony and his affidavit.  Furthermore, there are paragraphs in Plaintiff's First Amended Response to Defendants' Statement of Uncontroverted Facts for which the cited evidence does not support the facts asserted.  The Court has taken these issues into account and finds that for purpose of summary judgment, Plaintiff has presented evidence of the following:

Plaintiff, who was 68 years old at the time, was confused when he arrived at the scene because he did not know where his son was and why he was arrested.  He pulled up next to a police car, and while he was seated in his car with the window rolled down, he asked Defendant Ronald where his son was and why he was arrested.  Defendant Ronald was curt and responded that it was none of Plaintiff's business the reason his son was arrested.  Plaintiff asked again, and Defendant Ronald responded, "It's none of your fucking business."  Plaintiff admits that heated words were exchanged, but he remained seated in his car and did not threaten anyone in any way.  Defendant Ronald then approached Plaintiff's vehicle and asked Plaintiff, who was still seated in the car, if he had a gun, to which Plaintiff responded he did not.  Plaintiff admits he called Defendant Ronald a "prick" and a "jerk," and that he shouted.

At some point during this exchange between Plaintiff and Defendant Ronald, Defendant Seiverling rushed toward Plaintiff's vehicle.   In his affidavit, Plaintiff avers that Defendant Seiverling was "shouting in a manner I could not hear nor understand."  (ECF No. 55-5 at 2). Defendant Seiverling reached through the rolled down window into Plaintiff's car.  Plaintiff moved

---

[1]In support of his version of the facts, Plaintiff offers the following evidence: deposition testimony from Plaintiff and his son, affidavits from Plaintiff and his son, deposition testimony from Defendants Ronald and Seiverling, photos, medical records, and the SCCPD Use of Force policy.

his left arm in what he describes as a protective manner.  Defendant Seiverling delivered a number of punches to Plaintiff's face.  Plaintiff testified at his deposition that both officers hit him while he was still seated in his car and wearing a safety belt.  He was hit in his face, stomach, shoulder, and crotch area.  At some point one of the officers attempted to turn off the car's engine.  The engine, however, was already off, and the car restarted.

The officers never asked Plaintiff to exit his vehicle, and instead forcibly removed him. Defendant Ronald placed Plaintiff in a wristlock.  Plaintiff testified at his deposition that both officers pulled him out of his vehicle by his arm.  Defendant Seiverling then administered a leg sweep.  Plaintiff fell face first onto the asphalt pavement.  Plaintiff was then handcuffed and placed under arrest.

During the incident, Plaintiff did not possess a weapon.  Plaintiff denies ever threatening Defendant Ronald or Seiverling, punching either of the officers, or trying to run them over with his car.  Plaintiff never exited his vehicle or even opened the door.  Plaintiff did not take off his seatbelt.  Plaintiff also never attempted to flee.

Emergency medical technicians (EMTs) were called to the scene to assess Plaintiff's injuries. Plaintiff required assistance to walk to the ambulance.  Plaintiff was transported to the hospital for evaluation and treatment.  Plaintiff suffered from lacerations, abrasions, bruising, left shoulder and wrist injury, and right knee damage.  Plaintiff submitted photos and medical records substantiating his injuries.  The SCCPD did not obtain a "fit for confinement" and, as a result Plaintiff was not transported to the St. Charles County Jail following discharge from the hospital. Following the August 18, 2020 incident, Plaintiff was diagnosed with Post Traumatic Stress Disorder (PTSD), and he now has a fear of law enforcement.

**B.      Defendants' Arguments Against Plaintiff's Version of the Facts**

*1. Plaintiff has submitted admissible evidence to support his version of the facts*

Defendants argue that the Court should disregard Plaintiff's version of the facts because "Plaintiff relies primarily upon unsubstantiated allegations, speculation, conjecture, and self-serving statements to buttress his position." (ECF No. 60 at 1). The Court does not agree. Plaintiff's version of the facts is based on deposition testimony, affidavits, medical records, and photographs. Plaintiff does rely heavily on sworn testimony from his deposition and his own affidavit, but testimony and affidavits based on personal knowledge are admissible evidence for purposes of summary judgment. See Fed. R. Civ. P. 56(c)(4); Argenyi v. Creighton Univ., 703 F.3d 441, 446 (8th Cir. 2013) (an affidavit or declaration based on personal knowledge must be considered for purposes of summary judgment); compare Brown v. Diversified Distribution Sys., LLC, 801 F.3d 901, 908–09 (8th Cir. 2015) (finding employees' lack of personal knowledge would prevent their testimony from establishing a triable issue of fact).

The case comes down to the word of the two officers versus the word of a father and his son. When "opposing parties tell two different stories," the court must view material disputed facts "in a light most favorable to the non-moving party – as long as those facts are not so 'blatantly contradicted by the record . . . that no reasonable jury could believe' them." Reed v. City of St. Charles, Mo., 561 F.3d 788, 790 (8th Cir. 2009) (quoting Scott v. Harris, 550 U.S. 372, 380 (2007)). In the record before the Court, there is no body camera footage or surveillance video. Plaintiff's version of the incident contradicts the Defendants' account but is not "blatantly contradicted by the record," and a reasonable factfinder could find it credible after trial. The fact that Plaintiff's testimony and affidavit and that of his son differ from Defendant Ronald and Seiverling's version of the events does not entitle Defendants to judgment as a matter of law.

Defendants' argument that Plaintiff has not offered admissible evidence to create a dispute of material fact is without support.

### 2. *Sham affidavit doctrine*

Defendants also urge the Court to strike Plaintiff's evidence because "inconsistencies abound" between Plaintiff's affidavit and his deposition testimony. (ECF No. 60 at 3). Defendants accuse Plaintiff of submitting a sham affidavit in an attempt to defeat summary judgment. Defendants argue the Court should disregard Plaintiff's proffered evidence, and grant summary judgment in their favor.

"It is well-settled that parties to a motion for summary judgment cannot create sham issues of fact in an effort to defeat summary judgment." Button v. Dakota, Minnesota & E. R.R. Corp., 963 F.3d 824, 830 (8th Cir. 2020). An affidavit is a sham affidavit "if it contradicts prior testimony or is a 'sudden and unexplained revision of testimony [that] creates an issue of fact where none existed before.'" Id. (quoting Bass v. City of Sioux Falls, 232 F.3d 615, 618 (8th Cir. 1999)). District courts are to examine affidavits carefully, because not all discrepancies point to a sham affidavit. "[I]f the affidavit merely explains portions of a prior deposition that may have been unclear, it is not a sham affidavit." Id. (citing City of St. Joseph, Mo. v. Sw. Bell Tel., 439 F.3d 468, 476 (8th Cir. 2006)).

In support of their argument that Plaintiff has submitted a sham affidavit, Defendants point to the fact that during his deposition, Plaintiff testified that when he arrived on the scene, he first spoke to Defendant Seiverling, but in his affidavit, Plaintiff attests that the first officer he spoke to was Defendant Ronald. Defendants also point to the fact that in Plaintiff's affidavit, he attests that while arguing with Defendant Ronald, Defendant Seiverling ran up to his window, reached inside his vehicle and struck him; but at his deposition, Plaintiff testified that Defendant Ronald exited his vehicle, ran over to Plaintiff's vehicle, and started hitting him.

The Court has carefully reviewed Plaintiff's affidavit and deposition testimony.  During his deposition, Plaintiff appears to have been confused as to which officer was which.  When he was first asked to describe what happened, Plaintiff described the encounter but did not identify either officer by name.  (ECF No. 55-1).  Following his narrative, this exchange took place between Plaintiff and defense counsel:

> Q: Okay.  Now let's – let's back up a little bit.
>
> A: Sure.
>
> Q: … So when you approached the Outback and you . . . saw the police officer . . . do you know who that was?
>
> A: No, I have … no clue.
>
> Q: Well, at the time now, do you know what that –
>
> A: I know the names, yeah.
>
> Q: Okay, so –
>
> A: But I – you know, if all three were in a room, I couldn't tell you who they were, Frank.
>
> Q: Okay, all right.  So, if I was to tell you that was Officer Scott Ronald, you wouldn't disagree with that?
>
> A: No.

(ECF No. 55-1 at 9).

There are other instances in the deposition transcript when Plaintiff appears not to know which officer was which:

> Q: Okay, Okay, so at the time when you asked where you – when you asked Officer Ronald where your son was ... and he gave you the answer that you just said, did he give you any instructions or anything else?
>
> A: Not that I recall.
>
> Q: Did he tell you to leave the scene or to – that he was – he needed – he was in the – the process of filling out paperwork with regards to [your son]'s arrest or –

A: No.

Q: or anything? No information like that?

A: I assumed that the other man was doing that.

Q: Okay.

A: Which was Scott Ronald; correct? If Seiverling is talking to me, it was Ronald in the car?

(ECF No. 55-1 at 9).

And later in the deposition, Plaintiff testified as follows:

Q: You stated when you first arrived at the Outback . . . you spoke with Officer Seiverling –

A: I'm not sure ... which officer it was, but it was the taller – I think it was the taller officer.

Q:  Okay.

A: But it's been so long ago and I don't remember even what they look like, so I'm not sure who it was, really.

(ECF No. 55-1 at 18).

In his affidavit, Plaintiff attests that he now knows that the first officer he spoke to was Defendant Ronald, and the officer who rushed at his car was Defendant Seiverling.  In his affidavit and during his deposition, Plaintiff described basically the same series of events that occurred when he arrived at the Outback Steakhouse parking lot: that Plaintiff arrived in his car, rolled down his window and asked one officer about his son; the officer's response was rude and heated words were exchanged; Plaintiff remained in his car and did not threaten the officers; another officer rushed at his car and punched Plaintiff in the face while Plaintiff was still seated in the car; he continued to be punched in his face and body; at one point, one of the officers attempted to turn off the car, but the car was not running and it was started; eventually Plaintiff was pulled out of

the car by both officers; one of the officers took him down and he fell face first into the ground and was handcuffed and arrested.

It is not clear in from the deposition transcript which officer did what, but based on testimony in the transcript, there is reason to believe the confusion arose because Plaintiff did not know the names and/or identities of the officers at the time.  In his affidavit, Plaintiff clarifies that he now knows which conduct was attributable to which officer.  The Court does not find Plaintiff's affidavit is a sham.  Instead, Plaintiff states that he has since learned the names and identities of the two officers.  See Taylor v. Cottrell, Inc., 795 F.3d 813, 818 (8th Cir. 2015) ("an affidavit may be submitted to clarify ambiguities or confusion in deposition"); Popoalii v. Corr. Med. Servs., 512 F.3d 488, 498 (8th Cir. 2008) (contradictory affidavits are admissible when prior deposition testimony shows confusion).

Defendants also point to the fact that in his affidavit, Plaintiff attests he was never told he was under arrest.  Defendants assert this contradicts Plaintiff's deposition testimony.  The following is the portion of Plaintiff's deposition that Defendants use in support of the claimed inconsistency:

Q: Okay.  Now, before the handcuff was placed … on you, were you told that you were under arrest?

A: No.

Q: No?

A: I mean, there was the guy is just walking over, he says something about being arrested.  I'm thinking, what?

Q: Uh-huh.

A. And that – that's the only thing I can recall.  And that was as he's walking over and I don't remember anything else he said, really.

Q: Okay.  So, you don't remember if he gave you any instruction after saying you're under arrest?

A: No.

Q: -- he walked over, anything like that?

A. No Miranda rights.  They didn't even ask who I was.

(ECF No. 43-6 at 12).

The Court finds that this testimony is not clearly contradictory to Plaintiff's affidavit, but rather it is ambiguous.  Plaintiff testified someone made a statement about being arrested, but it is unclear who made the statement, at what point it was made in the encounter, and to whom it was directed.  Furthermore, there are other examples in the deposition transcript when Plaintiff testified that he was not told he was under arrest or given any instructions by the officers.  The Court declines to find Plaintiff's affidavit is a sham based on this example, as the deposition testimony is ambiguous, and the affidavit does not clearly contradict it.  Taylor, 795 F.3d at 818.

In further support of their argument that Plaintiff has submitted a sham affidavit, Defendants point to the fact that in his affidavit Plaintiff attests that he asked to speak with a supervisor, and that he told the officers he would park out of the way, but he wanted to get out and get his walker.  This was not mentioned during the deposition.  The Court finds this example is either an additional detail that was not asked about during the deposition or, at most, an immaterial inconsistency.  Smith v. Kilgore, 926 F.3d 479, 484 (8th Cir. 2019) (disregarding immaterial discrepancies in officers' testimony); Smith v. City of Brooklyn Park, 757 F.3d 765, 773–74 (8th Cir. 2014) (inconsistencies in officers' statements do not create genuine issue of material fact); Bass, 232 F.3d at 618 (an affidavit that expands on information not specifically asked about in a deposition is not a sham affidavit).

Finally, Defendants point to fact that in his affidavit, Plaintiff attests that he used his left arm in a protective manner while he was being attacked, but in his deposition, he testified that his

left hand was gripping the steering wheel.  First, the deposition and the affidavit are not inconsistent in this regard.  It is possible that Plaintiff moved his hands during the encounter, and this was a detail that was not asked about during the deposition.  Second, and more importantly, to the extent the affidavit and deposition testimony are inconsistent on this point, Defendants do not explain how a change in the position of Plaintiff's hands creates a dispute of <u>material</u> fact. They do not argue, for example, that it would not be the use of excessive force to hit a man seated in his car who was gripping the steering wheel, but if the man moved his arm in a protective manner, it would be.  An affidavit is a sham and should be disregarded if it contradicts prior testimony and creates an issue of material facts that were not there before.  <u>Garang v. City of Ames</u>, 2 F.4th 1115, 1122 (8th Cir. 2021).  The Court finds Plaintiff has not created an issue of material fact with this portion of his affidavit.

The Court declines to find that Plaintiff has submitted a sham affidavit for the purpose of creating genuine issues of material fact.  <u>Button</u>, 963 F.3d at 830.  Regarding facts that are material to Plaintiff's claims, such as the identifies of the officers, the Court finds Plaintiff's affidavit does not contradict his prior testimony but rather in many respects explains or clarifies it.  To the extent Plaintiff's affidavit does contradict portions of his deposition testimony, the inconsistencies relate to facts that are not material for resolving summary judgment.[2]

---

[2]The Court does agree with Defendants that there are a number of discrepancies between Plaintiff's deposition testimony and his affidavit.  Defendants may use these discrepancies at trial to cast doubt on Plaintiff's credibility.  But ultimately, it is for the finder of fact to determine Plaintiff's credibility, not the Court on summary judgment.  <u>See</u> <u>Torgerson</u>, 643 F.3d at 1042.

*IV. Discussion*

**A.     Qualified Immunity**

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Pearson v. Callahan, 555 U.S. 223, 231 (2009) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Officials are entitled to qualified immunity "unless (1) the evidence, viewed in the light most favorable to the plaintiffs, establishes a violation of a constitutional or statutory right, and (2) the right was clearly established at the time of the violation, such that a reasonable officer would have known that his actions were unlawful." Bernini v. City of St. Paul, 665 F.3d 997, 1002 (8th Cir. 2012).  Qualified immunity serves to protect "all but the plainly incompetent or those who knowingly violate the law."  Franklin for Est. of Franklin v. Peterson, 878 F.3d 631, 635 (8th Cir. 2017).  Officers are allowed considerable room for mistaken judgments.  Defendants Seiverling and Ronald move for the entry of judgment as to Counts I though III.  Defendants' arguments for qualified immunity, however, are based on their version of the facts.  Even when determining qualified immunity, the Court must view the facts in a light most favorable to Plaintiff for purposes of summary judgment.  Shannon v. Koehler, 616 F.3d 855, 861 (8th Cir. 2010).

*1.     Excessive force*

Excessive force claims in the context of an arrest are analyzed under the Fourth Amendment, applying a reasonableness standard. Henderson v. Munn, 439 F.3d 497, 502 (8th Cir. 2006).  "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it."  Graham v. Connor, 490 U.S. 386, 396 (1989).  "To establish a constitutional violation under the Fourth Amendment's right to be free from excessive force, the

test is whether the amount of force used was objectively reasonable under the particular circumstances." Henderson, 439 F.3d at 502 (quotation omitted).  The reasonableness of an officer's use of force is viewed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396.  The reasonableness inquiry, however, is an objective one: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." Id.  Circumstances relevant to the reasonableness of the officers' conduct include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396; see also Howard v. Kansas City Police Dep't, 570 F.3d 984, 989 (8th Cir. 2009).  "[F]orce is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public." Brown v. City of Golden Valley, 574 F.3d 491, 499 (8th Cir. 2009).

Defendants contend that Plaintiff was resisting arrest and, therefore, the force they used to effectuate the arrest was reasonable under the circumstances.  Defendants point to the fact that Plaintiff directed verbal threats towards them; he failed multiple times to comply with instructions given; Plaintiff resisted and attempted to evade arrest by putting his vehicle in gear and backing up, which jeopardized the safety of an officer; he pushed open the door to his car; and he punched Defendant Seiverling multiple times.  All of these facts, however, are disputed.

Viewing the facts most favorably to Plaintiff, he did not pose an immediate threat to the safety of the officers or others.  According to Plaintiff's version of the facts, when Defendant Seiverling first struck him, Plaintiff had not verbally or physically threatened either of the officers.  Plaintiff was seated in his car wearing his safety belt, and his car was not running.  He did not open the car door or attempt to get out.  Plaintiff was not fleeing or resisting arrest, and he did not strike

either of the officers.  Furthermore, there is evidence that Plaintiff was neither asked to get out of the car nor advised he was under arrest.  But despite these facts, according to Plaintiff, both Defendant Seiverling and Defendant Ronald punched him while he was seated in his car wearing a seatbelt.  And both Defendants forcefully removed him, with Defendant Ronald putting him into a wrist-lock and pulling him out by his arm, and Defendant Seiverling forcing him to the pavement with a leg sweep.

While it is undisputed that Plaintiff was argumentative and shouting, it was clearly established at the time of this incident that "verbal abuse alone does not justify the use of any force. Force can only be used to overcome physical resistance or threatened force." Bauer v. Norris, 713 F.2d 408, 413 (8th Cir. 1983) (cleaned up).  See also Shannon, 616 F.3d at 863 (use of force was unreasonable where officer tackled bar owner, who came within arm's length of officer and was yelling profanities telling officer to leave); Agee v. Hickman, 490 F.2d 210, 212 (8th Cir. 1974) (finding use of force was unreasonable where the plaintiffs were charged with disorderly conduct, there was no evidence that any crime had been committed, and no evidence that the plaintiffs physically resisted or threatened the officer—even though the plaintiffs were "argumentative, vituperative, and threatened legal action.").

The Court further finds that the facts of this case are distinguishable from other cases involving traffic stops and the forced removal of drivers from their vehicles.  Officers are "justified in using force to remove a driver, whom they believed to be impaired, from his vehicle after he refused to comply with their order to exit it." Schoettle v. Jefferson Cnty., 788 F.3d 855, 860 (8th Cir. 2015); accord Wertish v. Krueger, 433 F.3d 1062, 1066 (8th Cir. 2006) (holding that when a driver failed to comply with an officer's orders to get out of the vehicle, it was objectively reasonable for the officer to pull the driver from the truck and handcuff him).  Under the facts of this case, there is no evidence Plaintiff was drunk or impaired.  Second, it is disputed whether

Plaintiff failed to obey an instruction or was ordered to exit his vehicle and did not comply.  Finally, it is disputed whether Plaintiff's car was running, and whether he placed it in gear and attempted to flee or injure the Defendants.  See Boude v. City of Raymore, Mo., 855 F.3d 930, 933 (8th Cir. 2017) (officers who forcibly removed impaired driver from vehicle who had placed car into gear were entitled to qualified immunity); Lawyer v. City of Council Bluffs, 361 F.3d 1099, 1105 (8th Cir. 2004) (finding it was objectively reasonable for officer to feel physically threatened and dispense pepper spray into car where officer's arm was through the car window and the window began to close).

Defendants Seiverling and Ronald also argue they are entitled to summary judgment on the excessive force claim because the evidence established that the force they applied was *de minimis*.  In support of their argument, Defendants contend Plaintiff's injuries were *de minimis*.  Defendants point to the fact that paramedics treated Plaintiff at the scene for facial lacerations and bruising on his left hand and right wrist only, and that Plaintiff was taken to the hospital only due to his prior use of blood-thinner medication and was released a few hours later.

Defendants appear to be conflating *de minimis* force with *de minimis* injury.  A *de minimis* use of force is insufficient to support a Fourth Amendment claim.  Chambers v. Pennycook, 641 F.3d 898, 906 (8th Cir. 2011).  But a showing of only *de minimis* injury does not necessarily foreclose a claim of excessive force under the Fourth Amendment. Id.  "The appropriate inquiry is 'whether the force used to effect a particular seizure is 'reasonable.'" Id. (quoting Graham, 490 U.S. at 396).  It has been "clearly established that an officer is not entitled to qualified immunity if his use of force is excessive in the circumstances, even if the injury inflicted was minor." LaCross v. City of Duluth, 713 F.3d 1155, 1158 (8th Cir. 2013).

Based on Plaintiff's version of what happened, the Court finds that the force Defendants Seiverling and Ronald used was more than *de minimis,* and under the circumstances it was

unreasonable for Defendants Seiverling and Ronald to punch Plaintiff in the face, shoulder, abdomen, and crotch; forcibly remove him from his car by his arm; and for Defendant Seiverling to use a leg sweep to force Plaintiff to the ground.  See Westwater v. Church, 60 F.4th 1124, 1129 (8th Cir. 2023) ("five strikes to the back of the head with a closed fist" is more than de minimis force); Montoya v. City of Flandreau, 669 F.3d 867, 871 (8th Cir. 2012) (sweeping a leg to trip someone is actionable use of force); Shannon, 616 F.3d 855 (same); Copeland v. Locke, 613 F.3d 875, 881 (8th Cir. 2010) (slamming 67-year old man against a parked vehicle, throwing him to the ground, handcuffing him, and kneeing him in the back is not de minimis force); Brown, 574 F.3d at 499 (forced removal from car was unreasonable use of force); Lambert v. City of Dumas, 187 F.3d 931, 936 (8th Cir. 1999) (single small cut on the eyelid and small scrapes of the knee and calf support a finding of excessive force under the circumstances); Dawkins v. Graham, 50 F.3d 532, 535 (8th Cir. 1995) (holding that bruises and a facial laceration support a finding of excessive force); Bauer, 713 F.2d at 412 (the use of any force by the officers in the plaintiffs' arrest was unreasonable); compare Kelsay v. Ernst, 933 F.3d 975, 980 (8th Cir. 2019) (not clearly established that officer could not use leg sweep on suspect who ignored officer's command and walked away); Waters v. Madson, 921 F.3d 725, 739 (8th Cir. 2019) (light push was de minimis use of force and not actionable).

The Court finds there are genuine issues of material fact that preclude the entry of summary judgment.  Disputes of material fact exist as to whether Plaintiff verbally threatened the officers, whether he ignored instructions and was told he was under arrest, whether he opened his car door, whether he punched Defendant Seiverling when the officer reached into his car, and whether he attempted to drive away with Defendant Seiverling's arm in the car.  But viewing the record and drawing all reasonable inferences in the light most favorable to Plaintiff, "while simultaneously viewing the facts from the perspective of 'a reasonable officer on the scene[,]'" Shannon, 616 F.3d

at 863, the Court cannot find Defendants Seiverling's and Ronald's uses of force were objectively reasonable as a matter of law.  Based on Plaintiff's version of the facts, Court cannot find that a reasonable officer on the scene would have felt the need to use any force against Plaintiff, let alone punch him in the face and body multiple times, pull him from the vehicle, and force him to the ground.  Defendants Seiverling and Ronald would have known their conduct was unlawful, as it was clearly established at the time that it is unreasonable to use force against a suspect who is not fleeing, posing a threat to anyone, or resisting arrest.  Defendants Seiverling and Ronald are not entitled to qualified immunity as to Count I, excessive force.

### 2.    *Unlawful arrest*

With regard to Count II, unlawful arrest, Defendants argue the arrest was not unconstitutional because they had probable cause to believe Plaintiff was committing or had committed a crime.  Ehlers v. City of Rapid City, 846 F.3d 1002, 1008–9 (8th Cir. 2017).  "A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause." Amrine v. Brooks, 522 F.3d 823, 832 (8th Cir. 2008) (citing U.S. Const. amend. IV; United States v. Watson, 423 U.S. 411 (1976)).  An officer has probable cause to execute an arrest "when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." Borgman v. Kedley, 646 F.3d 518, 522–23 (8th Cir. 2011) (quotation omitted).  In determining whether an officer had probable cause, a court must "examine the events leading up to the arrest, and then decide whether the facts, viewed from the standpoint of an objectively reasonable . . . officer amount to probable cause." Maryland v. Pringle, 540 U.S. 366, 371 (2003) (internal quotations and citation omitted).

Arguable probable cause exists if an arrest "was based on an objectively reasonable—even if mistaken—belief that the arrest was based in probable cause."  Ulrich v. Pope Cnty., 715 F.3d 1054, 1059 (8th Cir. 2013).  "Arguable probable cause provides law enforcement officers in a

qualified immunity analysis 'an even wider berth for mistaken judgments' than the probable cause standard affords a reasonable person." Thurairajah v. City of Fort Smith, Ark., 925 F.3d 979, 983 (8th Cir. 2019) (quoting Ulrich, 715 F.3d at 1059).  Officers are entitled to qualified immunity if a reasonable officer would have reasonably believed, based the facts, that a crime was being committed, even if it is later shown that the officers were mistaken and lacked probable cause for the arrest.  Id.

Defendants contend Plaintiff was initially being placed under arrest for failure to comply with instructions to leave the area and interfering with the duties of a police officer.  Defendants further contend that after trying to take Plaintiff into custody, Plaintiff attempted to resist and evade arrest, by placing his vehicle in reverse, which jeopardized the safety of Defendant Seiverling, and that Plaintiff physically struck Defendant Seiverling multiple times, both of which would result in an objectively reasonable police officer believing that probable cause existed to arrest Plaintiff for Assault 3rd degree – Special Victim and Resisting/Interfering with Arrest.  Again, Defendants' argument is based on their version of the facts, which is disputed.

Viewing the facts in a light most favorable to Plaintiff, the Court finds that material disputes of fact remain as to what Plaintiff was or was not told to do, and whether he threatened the officers. Plaintiff concedes that he shouted at the officers, and there was an argument, but he disputes that he failed to comply with instructions or interfered with the duties of a police officer. Plaintiff points to the fact that he was there to pick up his son, as he had been instructed to do and, therefore, probable cause did not exist to arrest him for interfering with an arrest or the duties of a police officer.  He also presented evidence that he did not threaten the officers or physically strike them in any way; he did not attempt to run over an officer or even move his car when Defendant Seiverling's arm was through the car window.  Therefore, according to Plaintiff, probable cause did not exist to arrest him for assault.

The Court finds genuine issues of material fact remain concerning whether Defendants Seiverling and Ronald reasonably believed under the circumstances that there was probable cause to arrest Plaintiff for Assault 3rd degree – Special Victim, Resisting/Interfering with Arrest, or any other crime.  Defendants Seiverling and Ronald are not entitled to qualified immunity with regard to Plaintiff's claim of unlawful arrest in Count II.

### B.      False Imprisonment under Section 1983

With regard to Count III, false imprisonment under 42 U.S.C. § 1983, Defendants assert for the first time that they are entitled to summary judgment because Plaintiff's Complaint fails to state a claim because false imprisonment is not a violation of the U.S. Constitution or federal statute, but rather is a state law tort.  Citing King v. Beavers, 148 F.3d 1031, 1034 (8th Cir. 1998), Defendants argue false imprisonment is not cognizable under § 1983.

Plaintiff does not address Defendants' argument that false imprisonment is not cognizable under § 1983, and instead asserts that he has appropriately pleaded in Count III a claim for false imprisonment under Missouri law in that he was confined without legal justification and, therefore, Defendants are not entitled to summary judgment on Count III.

The Court concurs with Defendants that Plaintiff fails to state a claim in Count III.  In Count III, which is entitled, "Violation of 42 U.S.C. §1983: False Imprisonment," Plaintiff alleges the following: (1) Defendants Ronald and Seiverling subjected Plaintiff to false imprisonment; (2) the false imprisonment occurred during an illegal seizure of Plaintiff's person and thus deprived him of his civil rights pursuant to 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments to the United States Constitution; (3) at the time of the false imprisonment "without probable cause or reasonable suspicion of illegal conduct," Defendants Ronald and Seiverling acted under color of state law and knew that their conduct violated known and established constitutionally protected rights; (4) Defendants Ronald's and Seiverling's actions were carried out willfully, wantonly,

maliciously, and with such reckless disregard for the consequences as to demonstrate a conscious and deliberate indifference to Plaintiff's rights; and (5) as a result of the Defendants' unlawful conduct, Plaintiff suffered actual physical and emotional injuries, as well as other damages.  (ECF No. 1 at 14).  It is clear from these allegations that Plaintiff is attempting to assert a § 1983 claim for false imprisonment in violation of the Fourth and Fourteenth Amendments in Count III, not a state law tort claim.

Plaintiff fails to state a claim in Count III because false imprisonment is a state law claim that is not actionable under § 1983.  The Eighth Circuit has held there is no such claim under the Fourteenth Amendment.  King, 148 F.3d at 1034 ("False imprisonment is a state law tort.  It is not coextensive with the Fourteenth Amendment[.]").  As for the Fourth Amendment, false imprisonment is an extension of unlawful arrest – the two claims overlap.  In Wallace v. Kato, 549 U.S. 384 (2007), Supreme Court evaluated the statute of limitations for a false arrest claim under the Fourth Amendment.  The petitioner – who was arrested without a warrant, tried, and convicted – brought an unlawful arrest claim seeking damages from the time of his arrest through his imprisonment.  Id. at 386.  The Supreme Court concluded the petitioner's Fourth Amendment unlawful arrest claim accrued and the statute of limitations began to run when the petitioner was brought before a magistrate and held over on bond.  Id. at 390.  In its analysis, the Supreme Court noted that **damages for a false arrest claim cover the time of arrest up until issuance of process or arraignment**.  Id. at 389.  Accordingly, the Court finds Plaintiff's false imprisonment claim is not a separate claim but is encompassed within Plaintiff's claim for unlawful arrest under the Fourth Amendment in Count II.  See id.; see also Chaney v. Smith, No. 4:18-CV-00539 KGB, 2020 WL 7034558, at *7 (E.D. Ark. Nov. 30, 2020) (finding false imprisonment claim under § 1983 is an extension of unlawful arrest under the Fourth Amendment).

Furthermore, Plaintiff cannot amend his Complaint to add a state law claim for false imprisonment through his Memorandum in Opposition to Defendants' Motion for Summary Judgement.  N. States Power Co. v. Fed. Transit Admin., 358 F.3d 1050, 1057 (8th Cir. 2004) ("[W]hile we recognize that the pleading requirements under the Federal Rules are relatively permissive, they do not entitle parties to manufacture claims, which were not pled, late into the litigation for the purpose of avoiding summary judgment."); Fischer v. Minneapolis Pub. Sch., 792 F.3d 985, 990 n.4 (8th Cir. 2015) (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984) ("[I]t is axiomatic that [a] complaint may not be amended by the briefs in opposition to a motion to dismiss.").  The Court dismisses Count III, **false imprisonment under** 42 U.S.C. § 1983, for failure to state a claim.

### C.      State Law Claims

With regard to Plaintiff's state law claims of assault and battery, Defendants Ronald and Seiverling argue that Plaintiff has the burden of proving the use of unreasonable force.  Neal v. Helbling, 726 S.W.2d 483, 487 (Mo. Ct. App. 1987) ("[A] plaintiff asserting that he was battered in the course of an arrest must prove that the officer used unreasonable force in effecting it"). Defendants argue that Plaintiff has merely set forth unsubstantiated allegations and, therefore, he cannot meet his burden of providing prima facie evidence that Defendants Seiverling and Ronald utilized unreasonable force in effectuating his arrest, and they are entitled to summary judgment on Plaintiff's state law claims of battery and assault.  As discussed above, deposition testimony and affidavits based on personal knowledge are not allegations; they constitute evidence. Defendants Seiverling and Ronald's argument is without merit.

Defendants Seiverling and Ronald also move for summary judgment on Plaintiff's remaining state law claims of assault and battery based on official immunity and the public duty doctrine.  Under applicable Missouri law, official immunity "protects public officials sued in their

individual capacities from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts." State ex rel. Helms v. Rathert, 624 S.W.3d 159, 163 (Mo. 2021) (en banc) (quoting State ex rel. Alsup v. Kanatzar, 588 S.W.3d 187, 190 (Mo. 2019) (en banc)).  The purpose of official immunity is "to allow public officials to make judgments affecting the public safety and welfare without [t]he fear of personal liability."  State ex rel. Alsup, 588 S.W.3d at 190 (alteration in original) (internal quotations and citations omitted). Accordingly, official immunity has been broadly applied.  Id. ("Courts applying the doctrine of official immunity must be cautious not to construe it too narrowly lest they frustrate the need for relieving public servants of the threat of burdensome litigation.")

With regard to the public duty doctrine, "The public duty doctrine states that a public employee is not civilly liable for the breach of a duty owed to the general public, rather than a particular individual. This public duty rule is based on the absence of a duty to the particular individual, as contrasted to the duty owed to the general public." Southers v. City of Farmington, 263 S.W.3d 603, 611 (Mo. 2008) (en banc), as modified on denial of reh'g (Sept. 30, 2008) (internal citation omitted).  Defendants Seiverling and Ronald argue that "[a] police officer's duties to enforce the law and keep the peace are public duties, an alleged breach of which is not actionable by an individual citizen." (ECF No. 42 at 15) (citing Deuser v. King, 24 S.W.3d 251, 254–55 (Mo. Ct. App. 2000)).

Official immunity and the public duty doctrine are not absolute.  Official immunity does not apply where a discretionary act is "willfully wrong or done with malice or corruption." Letterman v. Does, 859 F.3d 1120, 1125 (8th Cir. 2017) (quoting Southers, 263 S.W.3d at 610). Likewise, the public duty doctrine will not apply where public employees act "in bad faith or with malice."  Southers, 263 S.W.3d at 612 (citations omitted).

24

In arguing that they have not acted in bad faith or with malice, Defendants Seiverling and Ronald assert the following:

> In the instant case, while Officer Seiverling and Cpl. Ronald utilized force to effectuate Plaintiff's arrest, their decisions to use force were not done in "bad faith" or with "malice". Specifically, Officer Seiverling delivered approximately 5-10 punches to Plaintiff with the intention of achieving Plaintiff's compliance, stopping Plaintiff from punching him any further, and thwarting Plaintiff's attempts to further resist and evade arrest. … Moreover, Cpl. Ronald's use of force in fighting off Plaintiff's right hand to shut off the ignition switch, as well as applying a wrist lock to Plaintiff's left hand, was done to protect the safety and well-being of Officer Seiverling and impede Plaintiff's continuing attempts to resist arrest.

(ECF No. 42 at 14). All of these facts, however, are disputed as previously discussed. Plaintiff has presented evidence that Defendants Ronald and Seiverling acted in bad faith or with malice by beating him without cause, warning, or justification. As to Plaintiff's remaining state law claims, Count VII and VIII, Defendants Ronald and Seiverling's motion for summary judgment on the basis of official immunity and the public duty doctrine is denied.

## V.    *Conclusion*

For the reasons set out above, Defendant Williams is entitled to summary judgment as to all claims against him in Count IV. As for Defendants Seiverling and Ronald, they are not entitled to qualified immunity on Plaintiff's § 1983 claims in Count I, excessive force, or Count II, unlawful arrest. Defendants Seiverling and Ronald are also not entitled to summary judgment on Plaintiff's state law battery and assault claims in Counts VII and VIII. The Court does find Plaintiff fails to state a claim in Count III, and the Court dismisses Plaintiff's claim for false imprisonment under 42 U.S.C. § 1983.

Accordingly

**IT IS HEREBY ORDERED** that Defendants Nicholas Seiverling, Scott Ronald, and John Williams's Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part, as follows: (1) John Williams is entitled to summary judgment as to all claims against him; and (2) Count III for false imprisonment under 42 U.S.C. § 1983 is **DISMISSED**.  In all other respects, the Motion for Summary Judgment is **DENIED**.  (ECF No. 41).

An order of partial dismissal will accompany this Memorandum and Order.


_Ronnie L. White_
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**


Dated this __5th__ day of May 2023.